STRECKER LAW OFFICES
Marc S. Strecker, Esq.
CA State Bar No. 140644
(To Be admitted *pro hac vice*)
One Park Plaza, Suite 600
Irvine, California  92614
Telephone:  (949) 852-3600
Facsimile:   (949) 861-9696
marc.strecker@sbcglobal.net

LAW OFFICE OF HAYES & WELSH
Martin L. Welsh, Esq.
(NV Bar No. 8720)
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Telephone: (702) 434-3444
Facsimile:  (702) 434-3739
mwelsh@lvlaw.com

*Attorneys for Plaintiff CHELAN LASHA*

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA, SOUTHERN DIVISION

| | |
|---|---|
| CHELAN LASHA, an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| v. | **[JURY DEMAND]** |
| WILLIAM COSBY, JR., an individual, | |
| Defendant. | |

Plaintiff CHELAN LASHA ("Plaintiff") alleges as follows:

## INTRODUCTION

1. This is an action arising from a sexual battery perpetrated by Defendant WILLIAM COSBY, JR. ("Cosby") on Plaintiff in Clark County, Nevada in 1986, when Cosby was an adult and Plaintiff was a minor.

2. Plaintiff brings this action under Nevada Revised Statutes 11.215 (rev. 2022), which provides that "an action to recover damages for an injury to a person arising from the sexual abuse or sexual exploitation of the plaintiff which

occurred when the plaintiff was less than 18 years of age may be commenced against the alleged perpetrator or person convicted of the sexual abuse or sexual exploitation of the plaintiff at any time after the sexual abuse or sexual exploitation occurred."

## JURISDICTION

3. Plaintiff resides in Los Angeles County in the State of California. Cosby is a resident of the Commonwealth of Pennsylvania. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), as the matter in controversy herein exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## VENUE

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

5. Venue in the Southern Division of the United States District Court, District of Nevada is proper under Rule 1-6 of the Local Rules of Practice for the District of Nevada because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Clark County, Nevada.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

6. When Plaintiff was 15 years old, in 1984, her stepmother Dana was working for a company that was in business with Cosby. Cosby saw a photo of Plaintiff on Dana's desk and commented on it. Dana told Cosby that Plaintiff was her stepdaughter and was studying acting and was doing modeling. Cosby called Plaintiff's grandmother Nelda Elizabeth Moore and introduced himself. He told her that Plaintiff had a future in modeling, acting and entertainment and that he would be interested in helping her.

7. When Cosby came to Las Vegas, he had conversations with Plaintiff's grandmother on the phone. He then visited Plaintiff's home at 3124

Vandermeer St., North Las Vegas, Nevada 89030. He gave out ice cream to the children in the neighborhood. He talked with Plaintiff and her grandmother and said he thought Plaintiff had potential.

8. Cosby visited Plaintiff's home on at least four separate occasions over the next two years. Plaintiff's grandmother would make soul food and Creole food for Cosby. Cosby would bring Jello pudding pops for the children in the neighborhood.

9. Plaintiff had Cosby's phone number at the Carsey-Werner production company and would occasionally call Cosby and they would converse over the phone. Cosby told Plaintiff that he would be a father figure to Plaintiff because both of Plaintiff's parents were in and out of prison at the time and Plaintiff was being raised by her grandparents. Cosby knew Plaintiff's life story and was a friend of the family. Plaintiff trusted Cosby and Plaintiff's grandparents trusted him.

10. In or about October, 1986, when Plaintiff was a 17-year old minor, Cosby called Plaintiff's grandmother and told her that he was in Las Vegas and that he had a photographer from the Ford modeling agency with him and he wanted to take some head shots of Plaintiff and have her do a script reading.

11. Plaintiff drove to the Las Vegas Hilton at 3000 Paradise Road, Las Vegas, NV, where she was employed at the time at the bell desk. She valeted her car, walked inside, went to the bell desk and she was taken up a private elevator to Room 3000, the Elvis Presley Suite. Cosby was in that room.

12. Cosby invited Plaintiff into the room. Plaintiff was blowing her nose and she told Cosby that she had a sinus issue. A photographer took some head shots of Plaintiff. Then Cosby asked Plaintiff to go into the bathroom and wet her hair and put on a hotel robe. She did so. Underneath the robe, she was wearing a "skort" and tank top and white tennis shoes. When she came out, the photographer took more photos of Plaintiff with wet hair, both with the robe on

and the robe off, and then the photographer left the room.

14. After the photographer left the room, Cosby gave Plaintiff a blue capsule that he told her was an antihistamine which would help with her sinus issue, and he also gave her a glass of Amaretto to take it with. Plaintiff took the pill as Cosby had instructed because she trusted him and thought he was a good man. She never imagined that he was going to drug her and sexually assault her.

14. Cosby had Plaintiff read some lines from a script. Then the doorbell rang and another person arrived in the room who Cosby said was a vocal coach and the coach asked Plaintiff to enunciate certain words and make certain sounds and read again from the script. Then the coach left the room. Then Cosby gave another glass of Amaretto to Plaintiff and told her to drink it. Plaintiff drank some of it. He kept asking Plaintiff if she was ok. Plaintiff was sitting on a couch. Cosby maneuvered around behind Plaintiff and started rubbing Plaintiff's shoulders. Then he told Plaintiff that she needed to lie down. He took her down a corridor to a bedroom and laid Plaintiff down on a bed. Cosby lay next to Plaintiff. Plaintiff at this time realized that she could not move. Her eyes were open and she was aware of what was happening but she could not do anything about it. She was confined to the room because she could not move. She was aware of her confinement and was very distressed by it but could not do anything about it.

15. Cosby started touching Plaintiff's breasts and nipples and was humping on her leg and grunting. Then Plaintiff felt Cosby ejaculating on her leg. Then Plaintiff passed out unconscious.

16. Plaintiff woke up to the sound of Cosby repeatedly clapping his hands and repeatedly saying "Daddy says wake up." Plaintiff was still groggy and disoriented but she knew what had happened. Plaintiff noticed that her clothes were off and she was naked under the robe and the robe was open. She

was aware that Cosby had had sex with her. Plaintiff never consented to having sex with Cosby. She had been a virgin prior to this assault. She noticed that her clothes were on a dresser along with a stack of $100 bills. Cosby told her to get dressed and that she had to leave now.

17. Cosby ushered Plaintiff out the door of the room. He took her to the elevator and as he put her on the elevator, he gave her the stack of $100 bills and he said it was for Plaintiff and her grandmother to buy clothes to come to a musical concert at the Hilton. Plaintiff was disoriented but went down the elevator and went to the valet and got her car. She drove directly to her friend Patricia Green's house because it was closer than driving to Plaintiff's grandmother's house. Patricia Green asked Plaintiff what happened because Plaintiff appeared disheveled. Plaintiff said Mr. Cosby gave me a pill. Plaintiff proceeded to tell Ms. Green more of what had happened. Plaintiff drove home and called her sister Yahne and told her what Cosby had done. Plaintiff then went to her room and cried. Plaintiff noticed that she had spots of blood in her panties. Cosby had penetrated Plaintiff vaginally.

18. Cosby called Plaintiff on the phone a couple of days later and asked Plaintiff how she was doing. She said she was not doing well and she was crying. Cosby then said people that talk too much can be quieted.

19. A few days after the attack, Plaintiff went to the Hilton and told the bell desk manager Eddie Najera what had happened. Mr. Najera had Plaintiff write down a statement. He told Plaintiff to take a few days off and he would investigate it.

20. Plaintiff attended Cosby's comedy show with her grandmother and she heckled Cosby throughout his comedy act.

21. When Plaintiff returned to work, her employment was terminated by Mr. Najera and Plaintiff was escorted off the property. He said it was because she did not show up at work, but Plaintiff had been told by Mr. Najera to take a

few days off.

22. Plaintiff was then "black-balled" in the entertainment industry and was unable to find work. Plaintiff is informed and believes and based thereon alleges that Cosby used his influence to cause Plaintiff to be shunned by the entertainment industry as a way of retaliating against her and silencing her.

23. The effect of the sexual assault was that an innocent teenage girl was robbed of her innocence. Plaintiff's trust had been betrayed and she had been taken advantage of in the worst way by a man that she had previously admired, respected and trusted. She ended up having a downward spiral in her life and suffered many long term problems, including drug addiction and other pathologies. The sexual assault has had lifelong negative impacts on Plaintiff's life, as it set her down a deleterious path and has tormented her ever since. She still breaks down crying about it to this day, and will likely do so for the rest of her life, or at least until she gets some justice and closure with Cosby facing accountability for his wrongful actions against her.

## CLAIM 1

(For Sexual Abuse and Sexual Exploitation of a Minor – NRS 11.215)

24. Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

25. This Claim arises under Nevada Revised Statutes 11.215.

26. Cosby's actions alleged herein constituted sexual abuse of a minor and sexual exploitation of a minor under Nevada Revised Statutes 11.215, as amended.

27. As a direct, proximate, and legal result of Cosby's sexual abuse and exploitation of Plaintiff, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but not limited to severe physical injury, psychological injury, pain and suffering,

serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

28.   As a direct and proximate result of the aforementioned sexual abuse and exploitation, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

29.   By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and
Adequate to compensate her for the harm caused to her by Cosby.

30.   At all times mentioned herein, Cosby intended to cause Plaintiff injury and/or his acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff.  Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and causing Plaintiff injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to injure Plaintiff, and with a conscious disregard of Plaintiff's rights and safety.  Cosby's actions were reprehensible, despicable, and in blatant violation of law.  Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby and others from future similar misconduct.

## **CLAIM 2**

(For Battery)

31.   Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

32.   Cosby's conduct as alleged hereinabove constituted intentional harmful and offensive touching of Plaintiff without the consent of Plaintiff, and

the willful and unlawful use of force or violence upon the person of another, so as to constitute battery under Nevada law. Cosby intentionally and willfully inflicted unlawful force or violence on Plaintiff, intended to cause harmful or offensive contact, did cause such contact, and caused Plaintiff to suffer damages as a result.

33. As a direct, proximate, and legal result of Cosby's battery of Plaintiff, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but not limited to severe physical injury, psychological injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

34. As a direct and proximate result of the aforementioned battery, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

35. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and Adequate to compensate her for the harm caused to her by Cosby.

36. At all times mentioned herein, Cosby intended to cause Plaintiff injury and/or his acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff. Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and causing Plaintiff injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to injure Plaintiff, and with a conscious disregard of Plaintiff's rights and safety. Cosby's actions were reprehensible, despicable, and in blatant violation of law. Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby

and others from future similar misconduct.

## CLAIM 3

(For Assault)

37. Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

38. Cosby's conduct as alleged hereinabove constituted an unlawful attempt to use physical force against Plaintiff. Cosby intentionally placed Plaintiff in reasonable apprehension of immediate bodily harm and intended to cause a harmful or offensive touching of Plaintiff, without Plaintiff's consent, so as to constitute assault under Nevada law. Plaintiff was in reasonable apprehension of immediate bodily harm and offensive touching as a direct result of Cosby's conduct.

39. As a direct, proximate, and legal result of Cosby's assault of Plaintiff, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but not limited to severe physical injury, psychological injury, pain and suffering, serious and severe psychological and emotional distress, mental anguish, embarrassment, and humiliation.

40. As a direct and proximate result of the aforementioned assault, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

41. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and Adequate to compensate her for the harm caused to her by Cosby.

42. At all times mentioned herein, Cosby intended to cause Plaintiff injury and/or his acts constituted despicable conduct with a willful and

conscious disregard of the rights or safety of Plaintiff. Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and causing Plaintiff injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to injure Plaintiff, and with a conscious disregard of Plaintiff's rights and safety. Cosby's actions were reprehensible, despicable, and in blatant violation of law. Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby and others from future similar misconduct.

## CLAIM 4

(For Intentional Infliction of Emotional Distress)

43. Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

44. Cosby's conduct as alleged hereinabove was extreme and outrageous as it was a despicable sexual attack on a defenseless child and constituted "child abuse" as defined under NRS 200.030(6)(b) as it was "physical injury of a nonaccidental nature to a child under the age of 18 years" and further constituted "sexual abuse of a child" under NRS 200.030(6)(d). These are heinous crimes of violence that are not tolerated in a civilized society. Cosby intentionally caused Plaintiff to suffer emotional distress or acted with or reckless disregard for the risk of causing Plaintiff to suffer emotional distress.

45. Plaintiff's emotional distress from Cosby's conduct was a foreseeable risk that Cosby knew or should have known before engaging in the above-described conduct.

46. As a direct, proximate, and legal result of Cosby's extreme and outrageous conduct, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but

not limited to severe and extreme emotional distress, psychological injury, pain and suffering, psychological and mental anguish, embarrassment, and humiliation.

47. As a direct and proximate result of the aforementioned conduct by Cosby, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

48. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and Adequate to compensate her for the harm caused to her by Cosby.

49. At all times mentioned herein, Cosby intended to cause Plaintiff injury and/or his acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff. Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and causing Plaintiff injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to injure Plaintiff, and with a conscious disregard of Plaintiff's rights and safety. Cosby's actions were reprehensible, despicable, and in blatant violation of law. Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby and others from future similar misconduct.

## **CLAIM 5**

(For Negligent Infliction of Emotional Distress)

50. Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

51. Cosby's conduct as alleged hereinabove created a risk of physical harm to Plaintiff.

52. Cosby failed to exercise the degree of care that an ordinarily careful and prudent person would exercise under the circumstances set forth above.

53. Plaintiff's emotional distress from Cosby's conduct was a foreseeable risk that Cosby knew or should have known before engaging in the above-described conduct.

54. As a direct, proximate, and legal result of Cosby's conduct, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but not limited to severe and extreme emotional distress, physical injury, psychological injury, pain and suffering, psychological and mental anguish, embarrassment, and humiliation.

55. As a direct and proximate result of the aforementioned conduct by Cosby, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

56. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and Adequate to compensate her for the harm caused to her by Cosby.

57. At all times mentioned herein, Cosby's acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff. Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and exposing Plaintiff to the risk of injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to expose Plaintiff to injury, or with a conscious disregard of Plaintiff's rights and safety. Cosby's actions were reprehensible, despicable, and in blatant violation of law. Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby and others from future similar misconduct.

## **CLAIM 6**

(For False Imprisonment)

58. Plaintiff incorporates herein by this reference each of the allegations contained in all of the paragraphs hereinabove as though fully restated at this point.

59. In order to carry out the sexual attack on Plaintiff described above, Cosby, intentionally and without the right to do so, confined Plaintiff within boundaries fixed by Cosby.

60. Cosby's acts directly or indirectly resulted in the confinement of Plaintiff.

61. Plaintiff was aware of her confinement and was harmed by her confinement.

62. As a direct, proximate, and legal result of Cosby's conduct, Plaintiff has sustained in the past, is sustaining now and will continue to sustain in the future general and special damages, including but not limited to severe and extreme emotional distress, psychological injury, pain and suffering, psychological and mental anguish, embarrassment, and humiliation.

63. As a direct and proximate result of the aforementioned conduct by Cosby, Plaintiff has incurred or will incur medical expenses and other economic damages in an effort to cure herself of the injuries and to alleviate her pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

64. By reason of the foregoing, Plaintiff is entitled to compensatory damages from Cosby in such amount as a jury finds fair, just, and Adequate to compensate her for the harm caused to her by Cosby.

65. At all times mentioned herein, Cosby intended to cause Plaintiff injury and/or his acts constituted despicable conduct with a willful and conscious disregard of the rights or safety of Plaintiff. Cosby subjected Plaintiff to cruel and unjust hardship, with the intention of deceiving Plaintiff and

causing Plaintiff injury, such as to constitute malice, fraud and oppression. Cosby acted with an evil and fraudulent motive and with the intent to injure Plaintiff, and with a conscious disregard of Plaintiff's rights and safety. Cosby's actions were reprehensible, despicable, and in blatant violation of law. Plaintiff is therefore entitled to recover punitive and exemplary damages from Cosby in such amount as a jury would find fair, just, and adequate, to deter said Cosby and others from future similar misconduct.

## PRAYER FOR RELIEF

### As to Claim One

1. For compensatory damages according to proof, including general and special damages; and

2. For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

### As to Claim Two

1. For compensatory damages according to proof, including general and special damages; and

2. For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

### As to Claim Three

1. For compensatory damages according to proof, including general and special damages; and

2. For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

///

///

**As to Claim Four**

    1.    For compensatory damages according to proof, including general and special damages; and

    2.    For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

**As to Claim Five**

    1.    For compensatory damages according to proof, including general and special damages; and

    2.    For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

**As to Claim Six**

    1.    For compensatory damages according to proof, including general and special damages; and

    2.    For punitive and exemplary damages in an amount sufficient to punish Cosby for his wrongful conduct and deter further misconduct by Cosby or others.

**As to All Causes of Action**

    1.    For interest, including without limitation prejudgment interest, as provided by law;

    2.    For attorneys' fees and costs, to the extent provided by law; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3. For such other and further relief as the Court may deem just and proper.

Dated:  January 29, 2024

STRECKER LAW OFFICES

By:  /s/ Marc S. Strecker
Marc S. Strecker, Esq.
(To Be Admitted Pro Hac Vice)
One Park Plaza, Suite 600
Irvine, California  92614
Telephone:  (949) 852-3600
Facsimile:   (949) 861-9696
marc.strecker@sbcglobal.net

*Attorneys for Plaintiff CHELAN LASHA*

-and-

LAW OFFICE OF HAYES & WELSH

By:  /s/ Martin L. Welsh
Martin L. Welsh, Esq.
Nevada State Bar No. 8720
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Telephone: (702) 434-3444
Facsimile:  (702) 434-3739
mwelsh@lvlaw.com

*Attorneys for Plaintiff CHELAN LASHA*

## DEMAND FOR JURY TRIAL

Plaintiff CHELAN LASHA hereby demands trial by jury.

Dated: January 29, 2024

STRECKER LAW OFFICES

By: /s/ Marc S. Strecker
Marc S. Strecker, Esq.
(To Be Admitted Pro Hac Vice)
One Park Plaza, Suite 600
Irvine, California 92614
Telephone: (949) 852-3600
Facsimile: (949) 861-9696
marc.strecker@sbcglobal.net

*Attorneys for Plaintiff CHELAN LASHA*

-and-

LAW OFFICE OF HAYES & WELSH

By: /s/ Martin L. Welsh
Martin L. Welsh, Esq.
Nevada State Bar No. 8720
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Telephone: (702) 434-3444
Facsimile: (702) 434-3739
mwelsh@lvlaw.com

*Attorneys for Plaintiff CHELAN LASHA*